IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

05 MAR -4 PM 3: 05

CLERK-ALBUQUERQUE

UNITED STATES OF AMERICA,

    *Plaintiff,*

v.

$1,199,500.00 IN U.S. CURRENCY
AND $9,800.00 IN U.S. CURRENCY,

    *Defendant,*

AVTAR VERMA AND AJAY VERMA,

    *Claimants.*

Civ. No. CIV-05-243 WDS RHS

# Verified Complaint for Forfeiture In Rem

Plaintiff states:

### Jurisdiction and Venue

1.     This is a civil action *in rem* for forfeiture of Defendant property which has been located and will be arrested by execution of a Summons and Warrant for Arrest in the District of New Mexico; and during the pendency of this action Defendant, or its equivalent or proceeds thereof, will be subject to the jurisdiction of this Court.

2.     The United States District Court for the District of New Mexico has exclusive, original jurisdiction under 28 U.S.C. §§ 1345, 1355 and 1356.

3.     Venue is proper under 28 U.S.C. §§ 1355 and 1395.

4.     The "res" or property which is the subject of this action consists of One Million One Hundred Ninety Nine Thousand Five Hundred Dollars ($1,199,500.00) and Nine Thousand

1

Eight Hundred Dollars ($9,800.00) in United States currency. The value of said property is $1,209,300.00.

## Parties and Claimants

5.  The following persons may claim an interest in Defendant:

   (a).  Avtar Verma, 4019 East Emelita, Mesa, Arizona 85206, whose attorney is Nancy Hollander, Esq., 20 First Plaza Suite 700, Albuquerque, NM 87102.

   (b).  Ajay Verma, 4019 East Emelita, Mesa, Arizona 85206, whose attorney is Nancy Hollander, Esq., 20 First Plaza Suite 700, Albuquerque, NM 87102.

6.  On information and belief, there may be additional persons or entities unknown to plaintiff who claim some right, title or interest in Defendant (the "Unknown Claimants").

7.  The Unknown Claimants are amenable to service of process only by publication pursuant to Rule C(4) of the Supplemental Rules for Certain Admiralty and Maritime Claims.

8.  Defendant property was seized on September 22, 2004 on land in Bernalillo County, New Mexico, and is subject to arrest and forfeiture in the District of New Mexico.

## Facts

The circumstances from which the claim for forfeiture of defendant arise are:

9.  On September 22, 2004, Drug Enforcement Administration (DEA) Special Agent (SA) Kevin Small observed an Amtrak Train reservation for Avtar and Ajay Verma. The Vermas were traveling one-way from Flagstaff, Arizona to Chicago, Illinois on Amtrak Train number 4 and from Chicago, Illinois to New York, NY on Amtrak Train number 48. The Vermas purchased their ticket on September 21, 2004 for $1,914.00 approximately seven hours prior to the train's departure. Based on training and experience, Agent Small knew that drug and

2

money couriers commonly purchase one-way tickets shortly before the train departs. The Verma's were traveling in sleeper room on their trip. Amtrak train number 4 was scheduled to leave Flagstaff, Arizona on September 22, 2004.

10. On September 22, 2004, when Amtrak train number 4 arrived in Albuquerque, New Mexico, SA Small went to room C, sleeper room 430 and knocked on the door. Ajay Verma opened the door. SA Small identified himself as a police officer and requested and received permission to talk to him.

11. Ajay Verma stated that he and his dad were traveling to New York for their clothing business. Verma said they would be in New York for 10 days and planned to stay at his uncle's house.

12. Inside the Verma's room were two large suitcases and a small black suitcase. SA Small asked for permission to search the luggage. Ajay Verma denied consent.

13. SA Small then asked if a narcotics canine could smell their luggage. Ajay Verma agreed. Ajay Verma said that their luggage contained "just clothing." The luggage was stacked up against the wall. SA Small requested and received Ajay Verma's permission to enter the room and move the luggage so the canine could smell the luggage.

14. When SA Small lifted the luggage to move it to the bed, he observed that it was extremely heavy. The large suitcases were weighed later. One weighed 62 pounds and the other weighed 60 pounds.

15. While waiting for the canine to arrive, SA Small identified himself as a police officer to Avtar Verma and asked for and received permission to talk to him.

16. Avtar Verma stated they would be staying at his brother-in-law's house and

3

their suitcases contained clothing.

17. Narcotics canine "Taz" checked all the luggage in the room. "Taz" showed a strong interest in the large black El Portal suitcase, but did not alert to any of the items in the room.

18. SA Small informed the Verma that the dog did not alert. SA Small then asked why the bags containing just clothing were so heavy. Both Ajay and Avtar Verma's stated the suitcases also contained "books." SA Small asked why they had books in their luggage. Avtar Verma stated that he was going to read the books while he was on the trip. Due to the weight, SA Small questioned how Avtar Verma could read that many books in 10 days and still go on a business trip.

19. SA Small informed the Vermas that he was going to detain their luggage and attempt to get a search warrant.

20. SA Small informed the Vermas that they could continue on their trip, but the luggage was being detained. Ajay Verma then told SA Small that he would open the suitcase and show him the books. SA Small informed the Vermas that they did not have to open the suitcases and if they wanted to open the suitcase it would be up to them. Ajay Verma wanted to talk to his father. After they conferred privately, Ajay Verma stated he would open the suitcase and show SA Small the books.

21. Ajay Verma attempted unsuccessfully to open the large green suitcase and then turned to SA Small and said "it's locked." Avtar Verma stepped forward and unlocked the suitcase. Ajay Verma flipped open the lid. There were no books visible. Ajay Verma began moving items of clothing around, which exposed numerous FedEx cardboard mailing envelopes.

4

SA Small asked what was in the mailing envelopes. Avtar Verma replied "money." SA Small asked how much money was in the envelopes and Avtar Verma said "one million dollars."

22. Amtrak train number 4 was preparing to depart Albuquerque, New Mexico. SA Small detained both Ajay Verma and Avtar Verma and brought them to the DEA Albuquerque District Office.

23. At the DEA office, agents found and removed clothing, books and a bag of limes from the green suitcase and left only seven FedEx cardboard envelopes in the suitcase. Drug detection canine, "Taz" performed a controlled search of the green suitcase containing only the FedEx envelopes. The controlled search involved placing the green suitcase and three other untainted bags in line against the wall spaced at eight to ten foot internals. "Taz," alerted positively for the odor of illegal controlled substance(s) emanating from the green suitcase.

24. Agents then waited an appropriate length of time and placed the black suitcase in a line with three other untainted bags against wall spaced at eight to ten foot intervals. The black suitcase was not in the same position as the green suitcase in the previous controlled search. "Taz" alerted positively for the odor of illegal controlled substances(s) emanating from the black suitcase.

25. At all times material hereto, "Taz" was properly trained and certified to alert to the odor of marijuana, methamphetamine, heroin and cocaine.

26. A positive alert to the United States Currency by a properly trained drug detection canine means that the currency recently or just before packaging has been in close proximity to a large amount of illegal narcotics.

27. SA Small read Avtar Verma his constitutional (<u>Miranda</u>) rights. Avtar Verma

5

agreed to speak with SA Small. Verma stated that both large suitcases contained money. Verma also stated that the money belonged to him and a company that he owns called Star of India Fashions. Verma stated several times that the money was not from drugs or anything illegal. Verma then immediately added "but my son has nothing to do with this." Verma said he was traveling to New York to purchase "things" for his business.

28. Verma could not say what the "things" were or where he was going to buy them. SA Small asked for the telephone number of Verma's brother-in-law at whose house Verma had stated he planned to stay. Verma told SA Small that his brother-in-law was not expecting him. Verma could not provide a name or telephone number of anyone or any business in New York that he was going to purchase anything from. Verma said he might not purchase anything on this trip, but might take the money back to Phoenix with him when he returned in ten days.

29. SA Small prepared a affidavit for a federal search warrant for the seven FedEx cardboard mailing envelopes and the large black El Portal suitcase. A Federal Magistrate determined that Agent Small's affidavit established probable cause and issued the search warrant.

30. Execution of the warrant revealed 8 FedEx cardboard mailing envelopes in the large black El Portal suitcase for a total of 15 FedEx envelopes. All 15 FedEx envelopes contained numerous bundles of United States Currency, wrapped in rubber bands. Agents know from training and experience that drug and money couriers commonly wrap money in rubber bands. The two suitcases contained a total of 19 books. The green suitcase also contained a bag of limes.

31. After executing the search warrant, SA Small re-interviewed Verma. Verma said

each envelope contained $80,000.00 in cash for a total of 1,200,000.00. Verma advised that he took the train because he had a heart condition and wanted to see the country. When asked how he planned to get home from New York, Verma said he planned to fly home. SA Small asked Verma if he took the train with the money to bypass TSA security at the airport. Verma became very upset and yelled "no." Verma said he had personally read all the books in the suitcases and planned to read them again on the trip. Some of the books were new and had never been opened.

32. Verma stated that in the clothing business you get a discount if you pay in cash. Verma said he travels to New York frequently to buy "things" for his company.

33. The clothing wholesale businesses that are similar to Verma's in New York garment district are not cash businesses. Instead, these wholesale sellers of clothing use bills of lading, terms, credit cards and "factoring" to conduct transactions.

34. Verma said this was the first time he had ever taken the train. Verma stated while he had carried money on previous trips, he had never taken this much money with him to New York before.

35. Verma gave SA Small permission to search his small laptop computer bag. The bag did not contain a laptop. Instead, agents found documents showing that the Vermas had purchased tickets to fly from Newark, NJ to Phoenix, Arizona on Tuesday, September 28, 2004. Other documents revealed that the Vermas were scheduled to arrive into New York on Amtrak on September 24, 2004.

36. Agents also found a reservation for Avtar Verma and another unidentified person to stay at the New York Marriott Marquis beginning on September 24, 2004 and ending on Tuesday, September 28, 2004.

37. Prior to releasing the Vermas, SA Small detained Ajay Verma's small black suitcase. SA Small informed Ajay Verma that he would be attempting to obtain a search warrant for it. Ajay Verma became upset and exclaimed "They cannot open my suitcase!"

38. SA Small prepared an affidavit for a Federal Search Warrant on Ajay Verma's small black suitcase. A United States Magistrate found probable cause and issued a search warrant.

38. Execution of the warrant revealed two white envelopes containing $9,800.00 in United States Currency. The two white envelopes were the same type of envelopes used to package the $1,199,500.00 seized from Avtar Verma's luggage.

## Claims for Relief

39. The Defendant Currency is subject to arrest and forfeiture to Plaintiff under 21 U.S.C. § 881(a)(6) because it was furnished, or intended to be furnished, in exchange for a controlled substance, or constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act.

40. The Defendant Currency is subject to arrest and forfeiture to Plaintiff under 18 U.S.C. § 981(a)(1) because it was involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1960.

41. The Defendant Currency is subject to arrest and forfeiture to Plaintiff under 18 U.S.C. § 981(a)(1) because it was involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956.

42. The Defendant Currency is subject to arrest and forfeiture to Plaintiff under 18 U.S.C. § 981(a)(1) because it was involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957.

43.     The Defendant Currency is subject to arrest and forfeiture to Plaintiff under 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952 or a conspiracy to commit such offense.

WHEREFORE: Plaintiff seeks arrest of Defendant and forfeiture of same to Plaintiff, determination of the validity and priority of claims of the Claimants and any Unknown Claimants to the Defendant, costs and expenses of seizure and of this proceeding, and other proper relief.

Respectfully submitted,

DAVID C. IGLESIAS
United States Attorney

*[signature]*

STEPHEN R. KOTZ
Assistant U.S. Attorney
P. O. Box 607
Albuquerque, New Mexico 87103-0607
(505) 346-7274

## 28 U.S.C. § 1746 Declaration

I am a Special Agent with the Drug Enforcement Administration who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Dated: March 4, 2005

_____
Kevin Small, Special Agent